IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MONTE C. DUTKO, Jr.,                              :
               Plaintiff                         :
      v.                                            : Case No. 3:22-cv-19-KAP
OFFICER JOSEPH R. MOSER,              :
*et al.*,                                             :
            Defendants                      :

Memorandum Order

In February 2022, plaintiff Monte Dutko, at that point an inmate at the Cambria County Prison, filed a *pro se* complaint on a standard complaint form (AO Form ProSe 14) dated January 26, 2022, against Officer Joseph Moser and his employer, the Cresson Township Police Department, and against two other police departments, the Sankertown Borough Police Department and the Cresson Borough Police Department. The plaintiff alleged, in very brief sentences, two excessive uses of force by Moser: 1) that on April 28, 2021, Moser used a taser on Dutko while Dutko was "face down at gunpoint"; and 2) that on December 13, 2021, according to Dutko, Moser "sexually assaulted my wife" and "hit my parked truck in my driveway, damaged my house, assaulted my wife." The events on the two days mentioned in the complaint led to two criminal cases in the Cambria County Court of Common Pleas in which Moser was the arresting officer.

The Cresson Borough Police Department was dismissed on motion. ECF no. 28. After discovery, the remaining defendants - Moser, Cresson Township Police Department, and Sankertown Borough Police Department – filed a motion for summary judgment, ECF no. 49, to which plaintiff has replied, ECF no. 57, in which he adds that he wants to bring a claim on behalf of his wife, and also a claim based on alleged perjury by Moser in a criminal trial. After consideration of the record, most especially the video evidence from the officer's body camera and dash camera and the plaintiff's cellphone cameras and house camera, summary judgment in part is ordered for the defendants as explained below.

The events of April 28, 2021, during which Dutko alleges Moser used excessive force, became Commonwealth v. Dutko, CP-11-CR-566-2021 (C.P. Cambria). Dutko, represented by counsel (Kimberly Feist, Esquire, now the Public Defender), pleaded *nolo contendere* to resisting arrest in violation of 18 Pa.C.S.§ 5104, and flight to avoid apprehension in violation of 18 Pa.C.S.§ 5126(a). On September 12, 2022, Judge Tulowitzki sentenced Dutko to two concurrent terms of 2-23 months imprisonment with automatic parole. There was no direct appeal, but in March 2023 Dutko filed a collateral attack on his conviction under Pennsylvania's Post Conviction Relief Act (PCRA). The

public docket indicates Judge Tulowitzki dismissed the PCRA petition and scheduled a hearing for sentence "clarification/modification" for May 4, 2023. The docket is unclear about the nature of the hearing but on May 25, 2023, a bench warrant was issued "extending case until defendant is found." This must have happened at some point because the docket also indicates Dutko was released on parole on December 13, 2023. No further proceedings are reported, and that sentence has apparently fully expired. Dutko's current confinement is based on a contempt in an unrelated domestic matter.

The offense to which Dutko entered a counseled *nolo* plea provides:

A person commits a misdemeanor of the second degree if, with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or **employs means justifying or requiring substantial force** to overcome the resistance.

18 Pa.C.S. § 5104 (my emphasis). Moser argues, *see* ECF no. 52, that Dutko's plea would be rendered invalid by any finding that the use of a taser was excessive, and is thus barred by the rule in Heck v. Humphrey. Moser further argues, *id.*, that Dutko is precluded from proving liability since at his sentencing he admitted "I just take full responsibility for my actions."

Technically, a *nolo* plea does not admit guilt, North Carolina v. Alford, 400 U.S. 25, 36n. 8 (1970), and probably for that reason evidence of a *nolo* plea is inadmissible in civil or criminal cases under F.R.E. 410(a), with the two exceptions in Rule 410(b) that are not applicable in evaluating the motion for summary judgment pending in this case. *See* Olsen v. Correiro, 189 F.3d 52, 61 (1st Cir. 1999)(A conviction based on a nolo plea "is ordinarily excluded when offered as substantive evidence of the facts underlying the crime," *quoting* 2 Weinstein, *Weinstein's Federal Evidence,* § 410.06[3], at 410–17, 410–18 (2d ed.1998)). Moser cannot use Dutko's plea as conclusive proof that Dutko's actions justified the use of a taser, and there is some precedent which, though questionable, suggests that Moser might not even be allowed to use Dutko's plea to impeach Dutko at trial. *See* Sharif v. Picone, 740 F.3d 263 (3d Cir. 2014).

Dutko's ambiguous statement at sentencing admitting his fault can be used to impeach Dutko. More importantly, the video record undermines the account in Dutko's complaint. Perhaps after reviewing the video record of the incident that comes from Dutko's own house camera and cellphone recordings, Dutko himself abandons the "face down at gunpoint" allegations in his complaint (and abandons any claim that Officer Hoenshall of the Sankertown Borough Police Department had even arrived by this time). Dutko now describes Moser's actions as tasing him while "I was holding my front door open with my hands up." ECF no. 57 at 2. Although the time frame when the use of the

taser occurred can be narrowed down to within a few seconds, Dutko depo. at 37-39, the video does not support that version either. In fact, no video shows the use of the taser itself, because the police department did not have body cameras until after this time.

Since this is summary judgment, I must disregard Moser's own account at this point that he tased Dutko because Dutko was attempting to flee. Moser Affidavit at ¶14, ¶22. Depending on how Dutko's account comes out at trial, the plaintiff's own account may result in a directed verdict for Moser. And of course, any jury believing Moser, or even believing that Moser made a good faith mistake about Dutko's resistance or risk of flight, would have to find for the defendant. But the conditional nature of that assessment implies that a finder of fact must hear that limited matter.

 No similar doubt remains about the viability of the claims arising out of the events of December 13, 2021. Dutko claims Moser assaulted or "sexually assaulted" his wife. Sadly, Mrs. Dutko passed away in October 2023. Dutko cannot recover for alleged wrongs done to Mrs. Dutko, nor can he represent Mrs. Dutko at all unless under Rule 17 he is appointed personal representative or administrator of her estate, retains a lawyer, and brings a separate suit in his capacity as representative. The lack of such claim in this suit does not preclude such an attempt, but while Dutko can bring his own claims *pro se*, he cannot present the claims of another person *pro se*. He certainly will not be allowed to bring such a claim in this suit.

If Dutko retains a lawyer to consider a separate complaint, Dutko should consider the account in his pretrial statement that Moser "look[ed] up and down [Mrs. Dutko]," and then "threw" Mrs. Dutko onto a bed and told her to get dressed because she was going to jail for harboring a fugitive. That is an account that Dutko substantially repeats in ECF no. 57. The problem is that the body camera video confirms that Mrs. Dutko was wearing a house dress at the time and not street clothes, and that Moser told her to change clothes and that she was being arrested. However, the video absolutely refutes the only claimed use of force.

Dutko does not claim excessive force was used against his person on December 13, 2021, only that it was used against his truck and house. Because the Fourth Amendment protects human rights in property and bodily security, but not property *simpliciter*, Dutko has no claim at all in this court. The most illuminating video is the approximately 15-minute body camera video showing Moser's point of view, which is accurately summed up in defendants' brief, together with the first ten minutes of Moser's dash camera. (Since plaintiff offers no counterstatement and does not oppose defendants' description, that summary could be taken as conclusive even if I had not viewed all the video submitted to me). The video confirms that on December 13, 2021, Moser was attempting to make a vehicle stop on a vehicle being driven by Dutko's son, in which Dutko was a passenger. Dutko's son fled from Moser at what the video shows to be an unsafe speed, turned off the

main road into a residential neighborhood, overtook and wove dangerously around a car driving on a typical one-and-a-half-lane-wide street without lane markings, and then pulled into Dutko's driveway. As the video shows, there is a pickup truck (agreed by all to be Dutko's) that is parked in the driveway. Dutko's son pulled up beside it and then jumped out and ran for the front door of the house, with Moser pulling up behind the pickup truck and striking its rear bumper with enough force to cause the air freshener hanging from the rear-view mirror of the truck to sway back and forth. There is no other visible damage, and it cannot be determined that the pickup truck was moved forward enough to come into contact with the concrete front porch that is at about bumper height. It cannot be ruled out that there was some property damage in a nominal amount. Moser exited his vehicle in hot pursuit of Dutko's son, followed closely by Dutko himself.

The next hour of video, factually summarized by Moser without meaningful opposition by Dutko, is of great interest, but legally is irrelevant to the claims in the complaint, which only concern the alleged assault on Mrs. Moser and property damage. No jury viewing the evidence could find that Moser intentionally struck Dutko's vehicle, and it is probable that a properly instructed jury would have to find Dutko's son, not Moser, the legal cause of (and therefore liable for) any damage caused by Moser's vehicle negligently striking Dutko's vehicle. Again, it is noteworthy that Dutko fails to submit any argument on this point, and his assumption that the law imputes liability from the fact of contact is incorrect. Negligent damage to property caused by government officials is actionable in Pennsylvania state court under the Political Subdivisions Tort Claims Act, but destruction of property, negligent or intentional, is not the basis for a federal civil rights claim.

There is a third matter that I have noted in previous memoranda, one that Dutko injects into in his opposition to the motion for summary judgment at ECF no. 57. In Commonwealth v. Dutko, CP-11-CR-567-2021 (C.P. Cambria), Dutko was charged with driving on April 10, 2021, while his license was suspended for a conviction of driving under the influence of alcohol. In a bench trial before Judge Krumenacker on August 23, 2021, Judge Krumenacker found Dutko guilty and sentenced Dutko to 2-6 months with automatic parole. By September 2022 the matter was concluded when a PCRA petition that Dutko filed was dismissed because the sentence had expired. Dutko did not mention this case in his complaint. In his pretrial statement, ECF no. 39, Dutko alleged that Moser committed perjury at the nonjury trial and implied that a motive for Moser's conduct on April 28, 2021 was Moser's frustration at his lack of success in arresting Dutko on April 10, 2021. Dutko adds the same accusation of perjury in his opposition to the motion for summary judgment, ECF no. 57 at 1-2. Dutko adds that Moser arrested his wife for DUI on April 29, 2021. This apparently is the subject of about fifteen minutes of cellphone video submitted on behalf of Dutko, during which time an otherwise unidentifiable officer is recorded giving field sobriety tests to a person who is described as Mrs. Dutko, then

arresting her. That evidence is irrelevant except to show animosity toward all police officers on the part of the young woman holding the cellphone.

Dutko, just like every other litigant, cannot amend his complaint in a pretrial statement or opposition to summary judgment to add a claim. Even if he could, Dutko has no evidence of perjury by Moser. The contradiction of one witness' account by the account of another witness does not constitute competent evidence of either witness' perjury. Much less does Dutko's account in this case constitute enough evidence to create a jury question about Moser's liability for perjury. And if Dutko could overcome these hurdles, Moser has absolute witness immunity for his testimony in trial. Briscoe v. LaHue, 460 U.S. 325 (1983).

Finally, Dutko offers no opposition to the motion of municipal defendants Sankertown Borough and Cresson Township for summary judgment. There certainly is no evidence that would support the liability of those defendants. I will not waste time explaining at length why there is no merit in claims that the plaintiff does not defend.

Dutko, by a thread, has a triable claim that Moser's use of a taser on April 28, 2021 violated the Fourth Amendment. He shall file a pretrial statement as to that claim within two weeks (before April 30, 2024), with defendant Moser's to be filed two weeks after that (before May 15, 2024). I expect this matter will take no more than one day to try, and whether the parties want a jury trial or a nonjury trial, the parties should be ready for a pretrial conference and trial the week of May 28, 2024.

All other claims against Moser (*i.e.*, any perjury claim, any claim based on the events of December 13, 2021, any claim on behalf of Mrs. Dutko) and against all other defendants fail for lack of evidence, and summary judgment on them is awarded to the defendants. The Clerk shall terminate defendants Sankertown Borough Police Department and Cresson Township Police Department.

DATE:  April 15, 2024                                        

Keith A. Pesto,
United States Magistrate Judge

Notice by ECF to counsel and by U.S. Mail to:

Monte C. Dutko, Jr. 23-1509
Cambria County Prison
425 Manor Drive
Ebensburg, PA 15931